# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MURRY COBB, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-00605 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| SCOTT A. FITCH, individually and as | ) | |
| Lake County Jail Medical Supervisor; | ) | |
| SUSAN WILLIAMS-DAVIS, | ) | |
| individually and as Health Service | ) | |
| Administrator; DR. ERIC MIZUNO, | ) | |
| individually and as agent or employee of | ) | |
| Correct Care Solutions, LLC and Wexford | ) | |
| Health Sources, Inc.; CORRECT CARE | ) | |
| SOLUTIONS, LLC; DEPUTY CHIEF | ) | |
| TED UCHIEK, individually and as | ) | |
| Assistant Warden Lake County Jail; DR. | ) | |
| KHURANA, individually and as agent or | ) | |
| employee of Wexford Health Sources, | ) | |
| Inc.; DR. MARVIN POWERS, | ) | |
| individually and as agent or employee of | ) | |
| Wexford Health Sources, Inc.; DR. RITZ, | ) | |
| individually and as agent or employee of | ) | |
| Wexford Health Sources, Inc.; PENNY | ) | |
| GEORGE, individually and as Healthcare | ) | |
| Unit Administrator; DONALD E. | ) | |
| JULIAN, individually and as Grievance | ) | |
| Officer; RUDY DAVIS, individually and | ) | |
| as Chief Administrative Officer; and | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiff's motion to supplement [52]; (2) Defendants Fitch and

Uchiek's motion to dismiss [22], in which Defendant Correct Care Solutions, LLC has joined;

(3) Defendants Davis, George, and Julian's motion to dismiss [31]; (4) Defendants Khurano,

Mizuno, Powers, and Wexford Health Sources, Inc.'s motion to dismiss [34]; and (5) Defendants Davis, George, and Julian's motion to sever [29]. For the reasons explained below, the Court: (1) grants Plaintiff's motion to supplement [52]; (2) grants in part and denies in part Fitch and Uchiek's motion to dismiss [22] and dismisses the claims against Fitch and Uchiek in their official capacities; (3) denies Davis, George, and Julian's motion to dismiss [31]; (4) grants in part and denies in part Khurano, Mizuno, Powers, and Wexford's motion to dismiss [34] and dismisses as moot Plaintiff's claim for injunctive relief (Count III); and (5) denies Davis, George, and Julian's motion to sever [29].

I. **Background**[1]

In late November 2012, Plaintiff had a lumbar MRI at the request of his physician, Dr. Nando. The MRI showed degenerative changes in Plaintiff's lumbar spine, including disc herniation indenting multiple lumbar nerve routes. In mid-May 2013, Dr. Nando completed a form referring Plaintiff to "neurosurgery" for chronic back pain and herniated disc. In late May, 2013, Plaintiff saw another doctor, Dr. Azaz, who prepared a referral for Plaintiff to "Neurosurgery Clinic-URGENT 1 month-Stroger."

Plaintiff scheduled an appointment with a neurosurgeon on August 19, 2013. However, on August 15, 2013, Plaintiff was arrested and transported to the Lake County Jail. Defendants Correct Care Solutions, LLC ("Correct Care") and Wexford Health Sources, Inc. ("Wexford") provided healthcare and medical staffing at the jail. Defendant Scott Fitch was the medical supervisor at the jail. Defendant Williams-Davis was a health care administrator for Correct Care at the jail. Defendant Dr. Mizuno was a doctor responsible for providing medical care at the jail. "The Lake County Jail medical department" was made aware of Plaintiff's August 19, 2013

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

medical appointment, his prior referrals for a neurosurgical consultation, and the results of his MRI showing lumbar disc herniation. [16] at 17. Jail officials did not permit Plaintiff to go to his August 19, 2013 doctor's appointment outside the jail.

On October 19, 2013, Plaintiff submitted a jail grievance and requested to be seen by a spine specialist. Plaintiff complained in the grievance that he was in daily and nightly pain and that the jail's medical supervisor, Fitch, had not allowed him to see a specialist as his two outside doctors had advised. On November 4, 2013, Plaintiff wrote another grievance raising the same complaints. On December 16, 2013, Defendant Uchiek, who was an assistant warden at the jail, responded to Plaintiff's grievances. Uchiek denied Plaintiff's request to be seen by a specialist and stated: "Continue to follow doctor's medical plan. I will also discuss this with medical. At this time we cannot send you out as you want." [16] at 29.

On January 27, 2014, Plaintiff filed the instant lawsuit.

On March 25, 2014, Plaintiff was transferred from the Lake County Jail to the Stateville Correctional Center ("Stateville"). Defendant Wexford also provides healthcare services at Stateville. Defendant Dr. Khurana was employed by Wexford to provide healthcare services at Stateville. When Plaintiff arrived at Stateville, Dr. Khurana did not give Plaintiff his medications and Plaintiff's sick call requests were denied. Plaintiff filed an emergency grievance. On April 11, 2014, Plaintiff was allowed to see a physician, Dr. Schwarz. Dr. Schwarz gave Plaintiff his medications and issued Plaintiff permits for thirty days of 'Low Gallery" and "Low Bunk" privileges.

On April 18, 2014, Plaintiff was transferred from Stateville to the Vienna Correctional Center ("Vienna"). Defendant Wexford provides healthcare services at Vienna as well. Defendant George was the healthcare unit administrator responsible for providing healthcare

services at Vienna. After Plaintiff's first three days at Vienna, George stopped giving Plaintiff his medication and took away his Low Gallery and Low Bunk privileges. Plaintiff was forced to climb up and down off a top bunk and to take three flights of stairs to get to meals, which caused Plaintiff severe pain.

On May 13, 2014, Plaintiff submitted a grievance complaining that he had been removed from his medications and his Low Gallery and Low Bunk permits. Plaintiff stated that he was in a great deal of pain and was missing two to three meals a day because he it was too painful to climb stairs to reach meals. George reviewed the care that Plaintiff was being provided and found that Plaintiff was receiving adequate care and treatment. George stated in her findings that Plaintiff was informed that his Low Gallery and Low bunk permits and prescriptions are "completed at the parent facility that the offender lives at." [16] at 34.

Defendant Julian, a grievance officer at Vienna who was responsible for investigating inmate grievances, also reviewed Plaintiff's grievance. On May 23, 2014, Julian concurred in George's findings and recommended that Plaintiff's grievance be denied. Defendant Davis, the chief administrative officer at Vienna, concurred in Julian's recommendation concerning Plaintiff's grievance.[2]

On June 6, 2014, Plaintiff filed an "offender request" asking for an update on his files and reporting continued severe, chronic pain and difficulty walking up stairs and climbing into his bunk. Plaintiff also requested his medications.

On July 18, 2014, George reviewed Plaintiff's case and completed a Medical Services Referral Denial or Revision notice. The notice stated that Plaintiff had an abnormal spine MRI and lumbar pain and was requesting a neurosurgical evaluation. George recommended that

---

[2] Plaintiff appealed the denial of his May 13, 2014 grievance to the Illinois Department of Corrections ("IDOC"). IDOC received the grievance on June 23, 2014 and denied it on October 3, 2014.

Defendant Dr. Powers review Plaintiff's records and determine how Plaintiff's condition was managed when he was not in custody. Dr. Powers, along with Defendant Dr. Ritz, was employed by Wexford to provide healthcare services at Vienna.

On August 20, 2014, Plaintiff filed an emergency grievance complaining that the nursing staff attempted to charge him for follow-up visits with Dr. Powers. Plaintiff contended that the visits should have been free. Plaintiff also again detailed his spinal condition and symptoms and requested to see a specialist. On August 23, 2014, Warden Hilliard (who is not named as a defendant) denied the request to treat the grievance as an emergency.

On August 25, 2014, Plaintiff filed a non-emergency grievance. On September 14, 2014, counselor Flamm (who is not named as a defendant) responded to Plaintiff and stated that he would schedule Plaintiff to see Dr. Powers for a follow-up visit at no charge.

On October 21, 2014, Plaintiff received a notice that George, Dr. Powers, and Dr. Ritz had reviewed his case on October 13. The notice reported that Plaintiff's back was worsening and that his pre-incarceration MRI results showed degenerative changes in his lumbar spine. The notice also noted that Plaintiff had a "slight gait issue." [16] at 9. George, Dr. Powers, and Dr. Ritz continued to prescribe Plaintiff anti-inflammatory medication and scheduled one physical therapy visit. They did not refer Plaintiff to a specialist.

On October 28, 2014, Plaintiff filed an emergency grievance requesting to be referred to a spine specialist for a neurosurgical evaluation. Plaintiff complained that he continued to suffer from "very bad and uncomfortable chronic pain." [16] at 9. On October 29, 2014, Warden Hilliard again determined that the grievance was not an emergency.

On November 6, 2014, Plaintiff's attorney requested that George and Dr. Powers approve a referral request for an immediate neurosurgical consultation. Plaintiff's counsel also requested medical records from Vienna.

On November 13, 2014, Plaintiff filed an "offender request" asking for follow-up attention to his medication and physical therapy. George responded to the offender request and stated that Plaintiff was scheduled to see Dr. Powers on November 24, 2014. However, Plaintiff was not allowed to see Dr. Powers on November 24, 2014 or at any time prior to January 19, 2015.

On January 19, 2015, Plaintiff filed an amended complaint with this Court.[3] The amended complaint contains four counts. In Count I, Plaintiff alleges that Defendants at the Lake County Jail (Fitch, Williams-Davis, Dr. Mizuno, Correct Care, Wexford, and Uchiek) violated his Eighth Amendment rights by denying him access to medical treatment. Plaintiff alleges that these Defendants knew of his severe medical condition and his need for a referral to a spine specialist, but failed to provide him with medical attention or access to a specialist. In Count II, Plaintiff alleges that Defendants at Stateville (Dr. Khurana and Wexford) violated his Eighth Amendment rights by denying him medical treatment and access to a specialist. Plaintiff also alleges that Dr. Khurana denied Plaintiff access to his medication between March 25, 2014 and April 11, 2014. In Count III, Plaintiff alleges that Defendants at Vienna (George, Dr. Powers, Dr. Ritz, Julian, Davis, and Wexford) violated his Eighth Amendment rights by denying him medical treatment and access to a specialist. Plaintiff also alleges that George denied him his medications and removed him from his Low Bunk and Low Gallery permits. In Count IV, Plaintiff requests injunctive relief against Wexford, George, Dr. Powers, and Dr. Ritz and

---

[3] Plaintiff has been represented by recruited counsel since April 2014.

requests that the Court order Defendants to schedule and provide Plaintiff with a neurosurgical evaluation by a lumbar spine specialist.

Since filing his amended complaint, Plaintiff has provided the Court with supplemental information concerning his medical condition. On April 20, 2015, Plaintiff was referred for an MRI of his spine. On June 26, 2015, Plaintiff was referred to orthopedic surgeon Jeffrey Jones, a spine specialist at the Orthopedic Institute of Southern Illinois. Dr. Jones has proposed surgery to address Plaintiff's spine condition. Plaintiff plans to proceed with the surgery.

## II. Analysis

### A. Plaintiff's motion to supplement [52]

Plaintiff moves to supplement his response [42] to the Defendants' motions to dismiss ([22], [31], and [34]) by providing the Court with an update concerning his medical status. The motion contains the update and attaches a consultation report and pre-op surgery orders prepared by Plaintiff's orthopedic surgeon, Dr. Jeffery Jones. No response to this motion has been filed. The court grants Plaintiff's motion to supplement and considers the supplement where applicable to its analysis below.

### B. Defendants' Motions to Dismiss

#### 1. Legal Standards

Rule 8(a) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Roe,* 631 F.3d at 857 (quoting *Estelle,* 429 U.S. at 104). A deliberate-indifference claim consists of both an objective and a subjective element. See *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The plaintiff must be able to establish both (1) that he suffered an objectively serious medical condition and (2) that the defendant acted with deliberate indifference to that condition. *Id.*

### 2. Defendants Fitch, Uchiek and Correct Care's motion to dismiss [22]

#### a. Objectively serious medical condition

Fitch, Uchiek, and Correct Care move to dismiss Plaintiff's amended complaint on the basis that Plaintiff's medical condition—chronic back pain caused by a degenerative lumbar spine condition—is not objectively serious. A medical condition is "serious" for purposes of establishing deliberate indifference to a serious medical need if the condition is "one that a

physician has diagnosed as needing treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (internal citation and quotation marks omitted). See also *Roe,* 631 F.3d at 857–58; *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). In this case, the amended complaint alleges that Plaintiff's back condition was previously diagnosed by two physicians, who both determined that Plaintiff needed to see a neurosurgeon. Thus, Plaintiff has pled that he suffered an objectively serious medical condition.

Defendants argue, nonetheless, that Plaintiff has pled himself out of court because the medical records attached to his amended complaint show that Plaintiff's "condition did not warrant his own immediate attention" and that Plaintiff "ignored his physician's advice" prior to his incarceration. [22] at 6. According to Defendants, these documents show that Plaintiff "treated his medical condition as a nuisance while at liberty from 2007 to August 15, 2013" and, therefore, Plaintiff's medical condition cannot be considered objectively serious as a matter of law. *Id.* (citing *Thompson v. Godinez*, 561 Fed. Appx. 515 (7th Cir. 2014)).

The Court is not persuaded by Defendants' argument. First, *Thompson* does not support Defendants' position that a Section 1983 plaintiff may plead himself out of court by acknowledging that his medical condition pre-dated his incarceration. In *Thompson*, the Seventh Circuit assumed for purposes of its analysis that back pain was a serious medical condition, but determined that Thompson had "[pled] himself out of court" by "revealing in his complaint" that he had received extensive treatment for that condition while incarcerated. 561 Fed. Appx. at 518-19.

Second, Plaintiff's amended complaint and the exhibits attached thereto, construed in the light most favorable to Plaintiff, do not support Defendant's factual assertion that Plaintiff's

"condition did not warrant [Plaintiff's] own immediate attention" and that Plaintiff "ignored his physician's advice." [22] at 6. Exhibit A to the amended complaint is a radiologist's report that Plaintiff received from Dr. Sayid on November 30, 2012, before Plaintiff was incarcerated. According to Defendants, Exhibit A shows that Plaintiff had back pain since 2007 but reported no action that he had taken to treat it. In fact, Exhibit A shows that Plaintiff had back pain since 2007 but that it had "[n]ow increased in severity." [16] at 21. And while Exhibit A does not list any actions that Plaintiff had been taking to treat his back pain, it does not establish that Plaintiff had been taking *no* action. Exhibit B to the amended complaint is a March 15, 2013 referral from Dr. Nano referring Plaintiff for "neurosurgery" to address his "chronic back pain" and "herniated disc." [16] at 25. Exhibit C is a May 28, 2013 referral from Dr. Ahmed referring Plaintiff to Stroger Hospital's neurosurgery clinic and is marked "URGENT 1 month." [16] at 26. Defendants argue that Exhibits B and C show that, by the time he was incarcerated on August 15, 2013, Plaintiff "had allowed 12 weeks to elapse since his appointment with Dr. Ahmed and had allowed the deadline for follow-up treatment that Dr. Ahmed had suggested that [Plaintiff] receive at Stroger Neurosurgery Clinic to pass by more than eight weeks." [22] at 3. However, there are no facts before the Court concerning why Plaintiff delayed seeking treatment, whether this delay was under Plaintiff's control, or whether Plaintiff was taking any other actions to treat his back paint prior to his incarceration on August 15, 2013. According to Plaintiff, he had an appointment with a neurosurgeon on August 19, 2013, which he was forced to miss as a result of his arrest and incarceration. Taking Plaintiff's well-pled allegations as true, which the Court must do when ruling on Defendants' motion to dismiss, the Court finds that Plaintiff has adequately alleged that he suffers from an objectively serious medical condition.

Defendants Fitch and Uchiek argue that Plaintiff cannot state a claim against them in their individual capacities because Plaintiff has failed to plead: 1) that he was at serious risk of harm; 2) that Fitch or Uchiek knew he was at serious risk of harm; 3) that Fitch or Ucheik acted in an intentionally criminally reckless manner; or 4) that Fitch or Uchiek had any interaction with Plaintiff whatsoever.

Viewing the pleadings in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated claims against Fitch and Uchiek, in their individual capacities, for deliberate indifference.  Plaintiff alleges facts supporting both elements of a deliberate indifference claim. First, as discussed above, Plaintiff alleges that he has an objectively serious medical condition. *Farmer,* 511 U.S. at 834.  Second, Plaintiff alleges that both Fitch and Uchiek had actual knowledge of but acted with deliberate indifference to his objectively serious medical condition. *Id.*  Fitch was the Medical Director for the Lake County Jail.  When Plaintiff was incarcerated at the jail, Plaintiff informed the medical department that he suffered from a spine condition, that his doctors had recommended an urgent referral to a neurosurgeon, and that he had an appointment with a neurosurgeon on August 19, 2013.  The grievance attached to the amended complaint shows that Plaintiff complained to Ucheik that Fitch had not allowed him to keep his doctor's appointment.  The grievance also shows that Plaintiff complained of severe chronic pain and requested to be seen by a specialist, as his doctors had advised prior to his incarceration. Nearly two months after Plaintiff filed his first grievance, Uchiek responded by denying Plaintiff's request to be seen by a specialist.  Uchiek stated: "Continue to follow doctor's medical plan.  I will also discuss this with medical.  At this time we cannot send you out as you want." There is no allegation that Uchiek followed up with "medical" before Plaintiff was transferred to

Stateville on March 25, 2014. Taken together, these allegations are sufficient to state a claim against Fitch and Uchiek for deliberative indifference.

Uchiek also argues that he could not be found to be deliberately indifferent to Plaintiff's medical condition, because "medical staff were monitoring and addressing" Plaintiff's problem. [22] at 10 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). Even if they refer an inmate's complaints to medical staff, however, "nonmedical officials can 'be chargeable with * * * deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011) (quoting *Hayes*, 546 F.3d at 525). The rationale is that "[t]here can be no reasonable reliance on the judgment of a medical staff where it is obvious that the staff is failing to exercise its medical judgment." In this case, Plaintiff stated in his grievances, which Uchiek reviewed, that Fitch was not addressing his problems, that his outside doctors told him he needed to see a specialist, and that he was in severe pain. Viewed in the light most favorable to Plaintiff, the pleadings and exhibits are sufficient to state a claim that Uchiek was on notice of a constitutional deprivation to Plaintiff and failed to take corrective action. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). See *Martinez v. Garcia*, 2012 WL 266352, at *5 (N.D. Ill. Jan. 30, 2012) (finding that warden's "failure to take action despite receiving both a letter and an in-person communication" in which the plaintiff "informed him of the medical staff's refusal to treat him, coupled with [the prison doctor's] unresponsive memos, suffices to defeat" the warden's motion for summary judgment on deliberate indifference claim).

### c.     Claims against Fitch and Uchiek in their official capacities

Fitch and Uchiek argue that Plaintiff's claims against them in their official capacities should be dismissed because they "have no power to establish or change rules regarding

[administrative] services" at the jail. [22] at 13. Plaintiff does not respond to this argument and, therefore, has forfeited his claims against Fitch and Uchiek in their official capacities. See *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1043 (7th Cir. 1999) ("by failing to respond responsively to the motion to dismiss * * * she forfeited her right to continue litigating her claim"); *Martin*, 2014 WL 4947674 at *2 ("A plaintiff may forfeit his or her right to continue litigating their claims by not responding to a motion to dismiss.").

The Court also agrees with Fitch and Uchiek on the substance of their argument. A claim against a person in his or her official capacity is proper only if the person has final policymaking authority. See, e.g., *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602 (7th Cir. 2001) (under Illinois law, school board president, district superintendent, and school principal did not have final policymaking authority with respect to personnel decisions, and thus they could not be held liable under Section 1983 in their official capacities for alleged retaliatory conduct in terminating teacher's employment). Plaintiff's amended complaint does not allege that Fitch or Uchiek have final policy-making authority. Therefore, any claims against these two Defendants will be in their individual capacities only.

### d.    Qualified immunity

Fitch and Uchiek argue that they are entitled to qualified immunity because "[t]he established law is that a prison official can rely on the medical staff at the facility," and "[t]here is no case law requiring jail officers or officials to monitor or oversee the medical care of inmates to ensure that their daily medical needs are being met." [22] at 13.

As an initial matter, it is unclear why Fitch believes that he should be treated as non-medical staff, since he is the medical director for the Lake County Jail. Regardless, it would be premature for the Court to dismiss Plaintiff's complaint against Fitch and Uchiek on the basis of

qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In determining whether a government official is entitled to qualified immunity, the Court examines "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011). Because this inquiry is usually fact intensive, dismissal on the basis of qualified immunity often is not appropriate. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This is especially true since plaintiffs are not required to plead facts to overcome the qualified immunity defense. *Id.*

In this case, Plaintiff has adequately alleged that Fitch and Uchiek acted with deliberate indifference to his serious medical needs. "The law is clear that deliberate indifference to a serious medical condition is a violation of a clearly established constitutional right." *Board v. Farnham*, 394 F.3d 469, 481 (7th Cir. 2005). See also *Estelle*, 429 U.S. at 104 (holding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment" (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976))). The law is also clear that, even if they refer an inmate's complaints to medical staff, "nonmedical officials can 'be chargeable with * * * deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett*, 658 F.3d at 755-56. "Because the record

requires further development of the seriousness of Plaintiff's medical condition" and the knowledge and "actions (or lack thereof)" of Fitch and Uchiek, "dismissal on the grounds of qualified immunity is inappropriate." *Hoddenback v. Chandler*, 2013 WL 5785598, at *5 (N.D. Ill. Oct. 28, 2013). See also *Bond v. Aguinaldo,* 265 F. Supp. 2d 926, 929 (N.D. Ill. 2003) (rejecting qualified immunity defense at motion to dismiss stage because plaintiff sufficiently alleged deliberate indifference to serious medical needs, which is a clearly established constitutional violation).

### 3. Defendants Davis, George, and Julian's motion to dismiss [31]

Defendants Davis, Julian, and George argue that Plaintiff's claims against them should be dismissed because Plaintiff does not adequately allege that they were personally involved in the alleged deprivation of Plaintiff's constitutional rights.

Specifically, Davis and Julian argue that their only involvement was reviewing Plaintiff's grievances and confirming that Plaintiff was receiving medical treatment, which is insufficient to state a claim against them for deliberate indifference. "[N]on-medical personnel not directly involved in an inmate's medical care are usually not liable for their review and/or denial of medical grievances." *Dobbey v. Randle*, 2015 WL 5245003, at *9 (N.D. Ill. Aug. 26, 2015) (citing *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012)). Nonetheless, "[a]n inmate's correspondence to a prison administrator may * * * establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82. See also *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (holding that an "inmate's letters to prison administrators may establish a basis for § 1983 liability" if the communication's "content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety'" (quoting *Farmer*, 511 U.S. at

837).  In this case, Plaintiff 's May 13, 2014 grievance is sufficiently detailed to have placed Davis and Julian on notice that Plaintiff was suffering from severe back pain, was missing meals due to his difficulty using the stairs, and not receiving the medication that he had been prescribed at Stateville.  Viewed in the light most favorable to Plaintiff, the pleadings and exhibits support a theory that (1) the Vienna medical staff was mistreating or not treating Plaintiff, (2) Davis and Julian knew about the mistreatment or non-treatment, and (3) they failed to take appropriate action.[4]

Defendant George argues that she lacks sufficient personal involvement in Plaintiff's alleged constitutional deprivation because she knew that the prison medical department was addressing Plaintiff's issues and she ensured that Plaintiff was seen by medical staff.  The Court

---

[4] See *Perez*, 792 F.3d at 782 (finding that plaintiff alleged facts sufficient to form a basis for personal Section 1983 liability against grievance officials where the "complaint alleges that the named defendants each obtained actual knowledge of Perez's objectively serious medical condition and inadequate medical care through Perez's coherent and highly detailed grievances and other correspondences" and "alleges that each of these officials failed to exercise his or her authority to intervene on Perez's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment"); *Dorsey v. Ghosh*, 2015 WL 3524911, at *3-4 (N.D. Ill. June 3, 2015) (allegations that warden "had actual knowledge that the Wexford Defendants were providing substandard treatment for Dorsey's various ailments" based on warden's review of Dorsey's grievances, that warden "oversaw medical staff operations," and that warden was involved with and approved decisions concerning outpatient medical treatment, were sufficient to support an inference that warden had actual knowledge of Dorsey's insufficient medical care as required to state a claim for deliberate indifference); *Hoddenback v. Chandler*, 2013 WL 5785598, at *3 (N.D. Ill. Oct. 28, 2013) (allegations that warden failed to respond to Hoddenback's emergency grievance, which stated "with specificity the [medical] conditions he was suffering from" and requested medical attention, or to Hoddenback's follow-up emergency grievance two weeks later, were sufficient to state a claim for deliberate indifference); *Liebich v. Hardy*, 2013 WL 4476132, at *6-7 (N.D. Ill. Aug. 19, 2013) (allegations that warden "confirmed the grievances in which plaintiff reported that the doctors were not responding to his medical requests" were sufficient to plead "knowledge on [warden]'s part, as well as inaction" as necessary to state a claim for deliberate indifference); *Zirko v. Ghosh*, 2012 WL 5995737, at *10-12 (N.D. Ill. Nov. 30, 2012) (allegations that warden received numerous grievances and complaints from Section 1983 plaintiff concerning lack of treatment for severe pain sufficient to state a claim against warden for deliberate indifference); *Phillips v. Wexford Health Sources, Inc.*, 2012 WL 1866377, at *3 (N.D. Ill. May 22, 2012) (allegations that warden received Section 1983 plaintiff's grievances concerning the Stateville Correctional Center's failure to give plaintiff medication needed to treat his AIDS were sufficient to state a claim against warden for deliberate indifference); *Nolan v. Thomas*, 2011 WL 4962866, at *6 (N.D. Ill. Oct. 19, 2011) ("Here, Plaintiff's complaint alleges that, at a minimum, Warden Thomas had several reasons to know that the non-party medical officer, Dr. Paul Harvey, was providing substandard care. * * * At the pleading stage, Plaintiff has stated enough to put these Defendants on notice as to a deliberate indifference claim.").

finds that it would be premature to dismiss Plaintiff's claim against George on this basis. Plaintiff alleges that George was the healthcare unit administrator responsible for providing healthcare services at Vienna. Three days after being transferred to Vienna, George removed Plaintiff from his medication. George also took away Plaintiff's Lower Gallery and Lower Bunk privileges, even though the Lower Gallery and Lower Bunk permits were still valid for several more weeks and Plaintiff complained that he was in pain and had limited mobility. Viewed in the light most favorable to Plaintiff, the pleadings and exhibits support a theory that George knew about Plaintiff's serious medical condition and acted with deliberate indifference by refusing George his medication and his Lower Gallery and Lower Bunk privileges.

For these reasons, Defendants Davis, George, and Julian's motion to dismiss [31] is denied.

### 4. Defendants Wexford, Khurana, Mizuno, and Powers' motion to dismiss [34]

#### a. Khurana, Mizuno, and Powers

Defendants Dr. Khurana, Dr. Mizuno, and Dr. Powers argue that Counts I, II and III of Plaintiff's amended complaint should be dismissed because the amended complaint and exhibits attached thereto demonstrate that Plaintiff was receiving substantial, tailored medical treatment for his spine condition while incarcerated in the Lake County Jail, Stateville, and Vienna.

"The court must examine the totality of the inmate's medical care in determining whether that care constitutes deliberate indifference to his serious medical needs." *Jones v. Natesha*, 233 F. Supp. 2d 1022, 1027 (N.D. Ill. 2002). Although a claim for deliberate indifference cannot be based on mere negligence, "a prisoner is not required to show that he was literally ignored by the staff." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). Thus, a prison doctor can be found to be "deliberately indifferent even though [he or] she provided some minimal treatment" to the

prisoner. *Conley v. Birch*, 796 F.3d 742, 748 (7th Cir. 2015) (summary judgment for prison doctor inappropriate even though doctor provided ice and aspirin for plaintiff's hand, which was determined by later x-ray to be broken). See also *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000) ("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference[.]").

In this case, Plaintiff's pleadings are sufficient to survive a motion to dismiss. The Court does not have full information concerning the "totality of [Plaintiff's] care" and cannot determine based on the amended complaint and its exhibits whether Defendants Wexford, Dr. Khurana, Dr. Mizuno, and Dr. Powers acted with deliberate indifference. *Jones*, 233 F. Supp. 2d at 1027. Although there are indications in Plaintiff's grievance letters that Plaintiff was receiving some pain medication while incarcerated, the same letters indicate that Plaintiff was still in severe pain and had not been allowed to see a neurosurgeon, which was the course of treatment that two of Plaintiff's doctors recommended to him shortly before he was incarcerated. The pleadings leave open the possibility that, although Plaintiff received "*some* treatment," the treatment he "did receive was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (genuine issue of material fact existed as to whether nurse's decision to withhold one particular medication from state prisoner and give him medication known to aggravate his esophageal condition, taken together with her threat that prisoner would be "locked up" if he continued to complain, could have supported conclusion that nurse was deliberately indifferent to prisoner's serious medical needs, precluding summary judgment); *Jones v. Simek*, 193 F.3d 485, 490-91 (7th Cir. 1999) (fact question as to whether prison physician knew inmate was suffering from

serious medical condition and refused to follow advice of specialists who were treating inmate precluded summary judgment on inmate's deliberate indifference claim). Therefore, the Court denies Dr. Khurana, Dr. Mizuno, and Dr. Powers' motion [34] to dismiss Counts I, II, and III of Plaintiff's amended complaint against them.

### b. Wexford

Wexford argues that Plaintiff's Section 1983 claims against it (Counts I, II, and III) must be dismissed because Plaintiff has failed to allege that Wexford has a custom or practice of deliberate indifference to inmates' serious medical needs, as required to establish Wexford's liability under *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978).

A *Monell* claim is a claim brought against a municipality (or other government actor) to hold it liable for constitutional violations that allegedly occurred as a result of the municipality's policy or practice. *Hobley v. Burge*, 2004 WL 2658075, at *8 (N.D. Ill. Oct. 13, 2004). "Wexford, a private corporation contracted by the Illinois Department of Corrections, is subject to a *Monell* claim for Section 1983 liability just as any municipality would be." *Ford v. Wexford Health Sources, Inc.*, 2013 WL 474494, at *9 (N.D. Ill. Feb. 7, 2013). "To prevail on his *Monell* claim, Plaintiff must show that he suffered a constitutional injury and that injury was caused by: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policy-making authority." *Taylor v. Garcia*, 2015 WL 5895388, at *7 (N.D. Ill. Oct. 6, 2015).

Despite Wexford's argument to the contrary, Plaintiff's amended complaint does allege that there is a widespread practice among Wexford employees of delaying medical treatment and that this practice caused Plaintiff unnecessary pain and suffering. Specifically, Plaintiff alleges that Wexford has a custom or practice of denying adequate health care to prisoners, including

Plaintiff, in order to reduce, contain, and limit the costs of medical care at the Lake County Jail, Stateville, and Vienna. [16] at 12-13, 15, 18. These allegations, viewed in the light most favorable to Plaintiff, support a permissible inference that Wexford has a widespread custom or practice of treating inmates' medical needs with deliberate indifference. See *Ford*, 2013 WL 474494 at *9 (denying Wexford's motion to dismiss *Monell* claim where governing complaint "alleges facts showing a custom or practice of: (1) delayed delivery of medical permits; (2) failure to administer medication or administration of ineffective medication; and (3) delayed scheduling of medical appointments" (internal citations omitted)). Because Plaintiff has sufficiently alleged a *Monell* claim that is plausible on its face under federal notice pleading standards, the Court denies Wexford's motion [34] to dismiss Counts I, II, and III against it. See *Twombly*, 550 U.S. at 570.

### c. Injunctive relief

In Count IV of his amended complaint, Plaintiff requests injunctive relief and a Court order requiring Wexford, George, Dr. Powers and Dr. Ritz "to schedule and provide Plaintiff with a neurosurgical evaluation by a lumbar spine specialist." [16] at 20. Defendants argue that Plaintiff's claim for injunctive relief should be denied because Plaintiff has presented "no evidence of ongoing constitutional violations at Vienna" and has "failed to adequately set forth any cause of action under the Eighth Amendment." [34] at 9.

The Court grants Defendants' motion to dismiss Count IV, but on a different basis than urged by Defendants. The Court finds that Plaintiff's claim for injunctive relief is moot because Plaintiff is now under the care of a specialist. Plaintiff represents in his supplemental response to Defendants' motions to dismiss that he has been allowed to see and is receiving treatment from orthopedic surgeon Jeffrey Jones. See *Powell v. Godinez*, 1997 WL 603927, at *7 (N.D. Ill.

Sept. 24, 1997) (dismissing as moot prisoner's claim for injunctive relief on deliberate indifference to medical needs claim, where plaintiff already received the neurological examination that he sought as injunctive relief). Therefore, the Court grants Defendants Wexford, Khurana, Mizuno, and Powers' motion [34] to dismiss Count IV of the amended complaint.[5]

### C. Defendants Davis, George, and Julian's motion to sever [29]

Defendants Davis, George, and Julian move to sever Plaintiff's claims against them and to transfer those claims to the U.S. District Court for the Southern District of Illinois, in which Vienna is located. Defendants assert that severance is proper under *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

The Court denies the motion to sever. Plaintiff's claims against Davis, George, and Julian were properly joined with his claims against officials at the Lake County Jail and Stateville because all of Plaintiff's claims arise out of the same occurrence or series of occurrences: Defendants' denial of Plaintiff's requests to see a specialist to treat his spine condition. See Fed. R. Civ. P. 20(a)(2) (allowing defendants to be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action"). As Defendants admit, if the claims were severed and Plaintiff's claims were tried in two actions, "there [would] be some overlap concerning the alleged failure to send Plaintiff out to a specialist." [30] at 2. In addition, Defendants have not identified any special difficulties that they would face if they were required to litigate their claim here rather than in the Southern District.

[5] Count IV is dismissed without prejudice subject to reinstatement if treatment is discontinued.

Finally, the Seventh Circuit's decision in *George* does not require severance in this case. In *George*, the Seventh Circuit held that the district court should not have allowed a Section 1983 plaintiff to "join 24 defendants, and approximately 50 distinct claims, in a single suit." 507 F.3d at 607. The plaintiff's "sprawling complaint charge[d] some defendants with failing to provide adequate medical care, others with censoring his mail, yet others with mishandling his applications for parole, and so on." *Id.* at 606. In this case, by contrast, all of Plaintiff's claims are based on Defendants' alleged failure to refer Plaintiff to a specialist as recommended by two of his doctors prior to his incarceration. Defendants Davis, George and Julian have not offered any compelling rationale for severing Plaintiff's claims against them and transferring them to the Southern District of Illinois. Therefore, their motion [29] to sever is denied.

## III.    Conclusion

For these reasons, the Court: (1) grants Plaintiff's motion to supplement [52]; (2) grants in part and denies in part Fitch and Uchiek's motion to dismiss [22] and dismisses the claims against Fitch and Uchiek in their official capacities; (3) denies Davis, George, and Julian's motion to dismiss [31]; (4) grants in part and denies in part Khurano, Mizuno, Powers, and Wexford's motion to dismiss [34] and dismisses as moot Plaintiff's claim for injunctive relief (Count III); and (5) denies Davis, George, and Julian's motion to sever [29]. The case is set for further status hearing on January 27, 2016 at 9:00 a.m. The Court requests that counsel file an updated joint status report, including a proposed discovery plan, no later than January 20, 2016.

Dated: December 23, 2015

Robert M. Dow, Jr.
United States District Judge